Moral Argument Act of 1875. Ms. Salinas, Supervising Attorney, will often involve students Mr. Chan and Mr. Goosley, 48-11. Good morning. Good morning, Your Honors. May it please the Court, my name is Melissa Salinas and I'm with the University of Michigan Law School. I have the privilege of introducing John Loosley and Kevin Kim, who will present today's argument. Kevin will present the opening argument for 11 minutes and then John, with the Court's permission, will present the rebuttal. Thank you. Since you guys are practicing, that's not usually how it works, so once you've graduated, figure out who to do the whole argument. But for today, it's perfectly fine. Great, thank you. If it may please the Court, my name is Kevin Kim on behalf of the defendant, Lewis Bell. This Court should vacate Mr. Bell's sentence and remand for resentencing for two reasons. One, Mr. Bell's 2007 conviction under MCL 750.82 is not a crime of violence in light of the Supreme Court's decision in Johnson v. the United States. And two, Mr. Bell's 1988 manslaughter conviction cannot be a crime of violence. If you send it back down, your client might get more time, couldn't he? I mean, if you're saying it couldn't be a crime of violence because it's not listed in another place in the pre-sentence report, it goes back in if you go get a remand, does it not? No, Your Honor. He's right. You would then add three points for manslaughter. In other words, when Mr. Bell's prior attorney at resentencing said, I agree with the PSR. I have no objection to the PSR. I want this. He was being very clever because the PSR didn't put the three points down for manslaughter. So Judge Seiler's question is if you go back and you recalculate, you're likely to get the three points. You could end up with a higher sentencing range and a higher sentence. So that's what he's saying. Yes, Judge Seiler and Judge Sutton, that is a possibility. But if that were actually to happen, the government would be getting a third chance of actually fixing their error. In the original PSR and in the revised PSR, the government did not object in either one. Okay. If that's Mr. Bell's position, that the government can't change its position, then it seems to me Mr. Bell should be stuck with that rule. Because this was not a situation where Bell's attorney, who did a very good job first time, got the case remanded, cut the sentence dramatically. He agreed with the PSR and he agreed . . . it's not just for failing to make an argument. It's affirmatively agreeing this is the right thing to do. That's more than forfeiture. That's usually thought of as a form of waiver as to that issue. So it would be very strange to say the government is stuck but not Mr. Bell. I mean, it would seem to me the threshold question for you is how is it possible that you're allowed to object to the PSR in this when you agree to it? And lo and behold, the lawyer was being very smart to agree to it. It gave Bell a better situation than he could have . . . he had a right to ask for. Yes, Your Honor. But in this situation, it's still Mr. Bell's direct appeal. He should be able to raise that issue. The government also claims that you've had a waiver here because it was not raised in the first appeal here. That is correct, Your Honor. That is the government's position. But Bell is still within his direct appeal of his conviction and his sentence. You have a good case that says you can bring up additional issues on the second time around. No, Your Honor, we do not. Johnson is directly applicable to this case. I think you're right about Johnson's application to some things. But at a minimum, I mean, let's just say for a second it's not waiver because if it's waiver, that's the end of the story. Let's just call it forfeiture, which gives you some arguments to make, and that means you then have to show plain air. And if it's a crime of violence case, yes, it's true. You can say there's some defects given Johnson. But I don't think Johnson has anything to say about the manslaughter conviction. And since manslaughter is mentioned in the commentary as a quintessential crime of violence, and if we're in plain air review, why wouldn't someone say, well, gosh, I mean, there's not a plain – there's nothing plain or seriously wrong with this sentence. In fact, it's probably better than he deserved because in spite of the Johnson problem and its effect on what the judge did, the manslaughter conviction easily fills that gap, at least for plain air purposes. Because, Your Honor, the text of 2K2.1 is not only mandatory but absolutely unambiguous. It states that you can only use predicate felonies that receive criminal history points. That word receive does not include is eligible to receive or can receive. It means receive. And in this situation, Mr. Bell did not receive any criminal history points. So what are the cases that say that's what receive means, even, by the way, in a situation where the defendant benefited from not getting the three points? I mean, it's a very funny argument. But what are the cases that make it that clear? Yes, Your Honor. Unfortunately, there are no cases directly on point to that issue. But the word receive is unambiguous. If the legislature wanted to include is eligible to receive or can receive, it would have included that. Instead, it just included the word receive, which means that a predicate felony that actually received criminal history points and not that was eligible to receive. Again, I'm back in plain air land. Why not say, for plain air purposes, a proper calculation, it would have received it? So there's no fundamental anxiety about a just sentence here because in a proper world, particularly if the argument had been raised below as it should have been, the district court judge would have said, oh, yeah, the manslaughter does get the three points. Received problem solved. Yes, Judge. In that respect, that would, again, be giving the government the benefit of being able to correct their error while leaving Mr. Bell out into the dust and being able to give the government a third bite at the apple because they did not object either the first or the second PSR. No, but it's not a third bite. It's just in this case. It's deciding the second resentencing. I don't know why that's a third bite at the apple. It's just saying there's no plain air in the second resentencing or the second sentencing. So the reason why Bell did not bring up the issue earlier is because Johnson is tangentially related to the issue of Mr. Bell's 1988 manslaughter conviction. Prior to Johnson, Mr. Bell would have clearly had two predicate felonies, one conviction for narcotics and two, his 2007 conviction under MCL 750.82. So during that point, even if Mr. Bell had raised the issue of his manslaughter conviction counting as a crime of violence, the point would have been moved because all the statute requires is at least two predicate felonies, and Mr. Bell at the time had three. So even if he had mentioned that the 1988 manslaughter conviction was erroneously classified as a crime of violence, the point would have been moved. I'm struggling with the information that's in the record. We have a PSR that lists the name of crimes and no statutory reference. If you're looking at the manslaughter, not only is it just the name, the manslaughter claim, but it's also an age 17 as opposed to an adult conviction. Or at least we're not, the record doesn't indicate to me how you make that determination. So I'm struggling with how one can apply a categorical analysis or make a determination whether a crime committed at age 17 is an adult crime without knowing the particular provision under which this individual was convicted. It seems to me that that's necessary to apply to Camp and Shepard. How is it that you chose what was the, you mentioned statutory references to prior convictions for fleeing, and the same thing is true for the assault with a deadly weapon conviction. How is it that you have selected the statutory predicate for that if there's nothing in the record that indicates that? So Your Honor, with reference to the assault with a dangerous weapon, I looked up Mr. Bell's record and found the specific statute that he was sentenced under. 750.82 is... So the question for me is, doesn't the PSR have to provide that information or the court have to reference that information so that there can be adequate review? Our Fowler case says, you've got to tell us what the crime is. You've got to apply the categorical approach. I'm not seeing that in the court's decision. You're correct, Your Honor. Those specific statutes are not included in Mr. Bell's PSR. The PSR is written by a branch of the government, so it is incumbent upon the government to include those statutes inside the PSR. And if they don't, and if the court doesn't address them, and if the categorical approach is nowhere applied in the court's decision, how is it that that satisfies the requirements to enable us to undertake review? I apologize, Judge French. Can you repeat your question? Three words. It does not. It does not, yeah. I mean, this is not your fault. This is a question of what's happening below, and I think perhaps it's not a terribly unusual error by the court and by the PSR, but it is, in fact, a very problematic error under our case law. So, yes. So what happens? The answer is it does not, as to what her question was, but then the response question is that's what's so important about plain error, and in this case, not just the failure to object, but the affirmative decision to say we're good with the PSR, with or without statutory citations, with or without giving three points to the manslaughter conviction, which it turns out was a pretty smart thing not to object to it because it was very beneficial. So the problems in the record are problems created by, it seems to me, a wise strategic decision because cleaning it up would have made things worse for your client. So it's true. We don't have information you would normally expect to see, but there's some actually reasons for that, and it turns out the reasons actually helped Bell. Not necessarily, Your Honor. Why wouldn't clarification on the manslaughter, pointing out the statute, all the circumstances, and the obvious flaw that it deserved three points have hurt Bell? So I see that my time is almost up. May I answer your question, Judge? Yes. So in that respect, you are correct that the PSR does in one way help Bell and help Bell's sentence, but if you look at it in the other direction, it actually hurts Bell's sentence as well, especially in the context of this appeal because if Mr. Bell's 1988 manslaughter conviction is seen as a predicate offense and a crime of violence, then Mr. Bell's appeal today is moot. So in that respect, Mr. Bell's appeal is actually very much contingent upon that error being reversed. But just so I'm getting the consequences of your winning straight,  so you're making the point that if we treat the manslaughter as a crime of violence, and if we do that alone, you say it's moot because it has no effect on the sentence, but if we do that plus correct the PSR and add three points, you know it's a higher range. So it's not the same. It's worse. No, Your Honor. So we're arguing that Mr. Bell's 1988 manslaughter conviction should not be a crime of violence because it did not receive criminal history points, and in conjunction with his 2007- If we correct, if we send it back for resentencing, you get the three points put in because everyone knows that was a mistake. But the text of the statute is clear, and we believe that this court should follow the text of the statute and only classify crimes of violence as those predicate felonies that have received criminal history points, and Mr. Bell's felony did not receive any. Okay. Thank you. Thanks very much. We'll hear from Mr. Chasteen. Good morning, Mark Chasteen for the United States. I think Your Honors have keyed in on one of the principal and key issues of this case, and that is you really never need to get to the question of whether the assault with a dangerous weapon constitutes a crime of violence because of this issue of the manslaughter. They're independent issues. If he has two crimes of violence predicates or drug trafficking crimes, he counts for a 24 offense level, and the manslaughter would count, as Judge Sutton and Judge Seiler have noted. Even if this case were to be remanded, the court certainly would be able to correct its error, which it was an error not to count the manslaughter conviction with three points. No objection is raised by the U.S. in that. No, and we're not cross-appealing, but this is a question that the defense has raised, and of course the court can recognize as the court's in wise and battle in the Tenth and Fourth Circuits recognize that really defendants aren't entitled to what I would call this sort of compound error theory where they're entitled because there's one error by the district court to capitalize on that throughout the rest of the sentencing and say, well, the court has to stick with that error that it made throughout, especially when they never raised it below and then never raised it or raised it only on appeal, and the goal of this entire appeal is to get a remand for resentencing. If it gets sent back down for a categorical approach to this other crime, can the pre-sentence report be revised in order to make this same calculation you're talking about? Sure, it can be. In fact, it was revised after the first appeal. There was a revised pre-sentence report that was issued to adjust for the fact that Mr. Bell was no longer considered to be an armed career criminal under the statutory provision that provides for a 15-year mandatory minimum sentence. So, yeah, that's the normal course is when a case comes back from the Court of Appeals. The probation department, which is an arm of the court, looks at the pre-sentence report, sees if anything needs to be changed based on the change in the posture of the case, and gives the court a revised pre-sentence report, which the parties are given in advance of sentencing and given an opportunity to review. Mr. Bell's attorney, Wynn Allen, who argued the appeal the first time around and then handled the sentencing the second time around, acknowledged at sentencing that they had received that revised pre-sentence report, and as Judge Sutton pointed out, I think made the very wise decision not to challenge this or raise this because he recognized that it would only result in a higher guideline range for Mr. Bell. It goes back down. Everybody's waiver is waived, and you start back. And in the end, you have three more points added to the PSI. And a higher guideline range for Mr. Bell. Correct. Judge Strantz, I wanted to respond to a question that you raised about how do we know whether this qualifies in a categorical sense as manslaughter as the guidelines consider it to be an enumerated offense. And the answer to that really goes back to the first appeal. In that first appeal, Mr. Allen filed a brief in which he did challenge this manslaughter conviction as a qualifying predicate for the Armed Career Criminal Act. I handled the first appeal as well, and when I saw Mr. Allen's brief, I sent him some additional discovery that it turned out he had not received from Mr. Bell's trial counsel. That additional discovery included the conviction documents for the manslaughter conviction, which showed that, in fact, it was a conviction under the Michigan State statute rather than common law manslaughter, 750.329. At that point, Mr. Allen made the choice to withdraw his challenge to the manslaughter conviction as a qualifying predicate and focus instead only on the Ohio drug trafficking conviction. So there were conviction documents that show the nature of this conviction. That still leaves me with the same question. We've got Fowler fairly recently and other cases that talk about needing the type of record that this court can review. And yet we see on occasion, on fairly regular occasion, PSR or other documents that come to us without the specifications that appears to me would be necessary to accurately do a categorical approach. Can you address that? Is your position that we just go back and we get those documents and presume this and everybody's on the same page but us because we haven't gotten the information? What procedure are you proposing for us when the record does not contain the necessary information? Well, let me clarify. The court has not been provided with these documents for a couple of reasons. One, it's because they never objected to this below, and so it's a pretty standard course that when a defendant does not object to the PSR convictions, that the district courts don't spend a lot of time going through the nature of them. They view it as an issue that if the defendant agrees, why are we litigating this? This court, I think it's in the, and I apologize because this wasn't an issue that was raised by the defense. I think it was in Braden recently, acknowledged that conviction documents could be given to the court of appeals and judicially noticed. So if a defendant were allowed to litigate the nature of their prior convictions in the court of appeals for the first time, those conviction documents could be provided to the court of appeals so it could make that determination. I recognize that it's a question of time, but it's your burden. So if it's not in the documents and it comes up to us, it's your burden that's lacking, it seems to me. So I think what we're struggling with is just the practicality of how to get this done and avoid this sort of thing. I understand, but I think part of the answer is, I think Judge Sutton, I think was suggesting is this is, you know, plain error view. And in fact, it's really waiver because the defendant's had multiple opportunities to challenge the nature of this conviction. In fact, doesn't even challenge it in this appeal. They are not challenging, have never challenged that manslaughter would in fact qualify as a crime of violence based on the nature of the offense or the conviction itself. You under your burden have waived any challenge to it also because there were no points. Well, I don't. There are no points given and you didn't complain. Why aren't you in the same position? We're not saying that it should receive points. That's why I was saying we didn't cross appeal and say that the district court erred and should have applied a higher guideline range and therefore maybe should have given a higher sentence. But this is in response to their argument that it shouldn't have qualified as a crime of violence. What's your answer to the argument they are making about manslaughter, which is the received language in the guideline? Well, I think, again, the Wise and Battle cases address that issue, that it was error under the guidelines themselves for the district court to not apply those three points. They're not entitled to then transmit that error to another consideration, which is whether it's a crime of violence. But, by the way, they have said repeatedly that this court should be stuck with the PSR and live only within the PSR. Well, the PSR found that this was a crime of violence. It included that. It said that it was in the list that they hinged their appeal on of predicate acts that qualified for a 24 base offense level. I guess maybe the way to put it is it's not even plain error. It didn't get the three points it should have. Therefore, you can't call it a crime of violence. Send it back to do it right. And when you do it right, you'll, of course, get the three points. And now you can call it a crime of violence. And it will be worse for Mr. Bell on remand. Well, yeah, that's without even getting into the worst part. But it wouldn't affect this point. And just to the more general point, I think that when the guidelines are speaking of received, they're referring sort of they're an internal self-contained set of rules that assume that they're going to be properly applied throughout. So when it says should receive points under Section 4B 1.1 and 1.2, they're saying, you know, I think it's assumed that the guidelines are going to be applied correctly. And so that when you say does something receive points, you're looking, it's a definitional reference. Does it receive points under those other sections? And, yes, it should. The guidelines aren't assuming that a district court is going to err in applying them. And, therefore, by operation of the guidelines themselves, it should have received three points and, therefore, would qualify as a crime of violence. So if this court were to find that the manslaughter conviction was properly counted as a crime of violence, then there really is no other issue as far as whether Mr. Bell's sentencing guideline range was properly calculated based on an offense level of 24. The second issue that Mr. Bell has raised, albeit in his reply brief only, and in the subsequent 28J submissions to the court, is that an assault with a dangerous weapon under Michigan law does not qualify as a crime of violence under Johnson 2015 or Johnson 2010. There's two different Johnson cases. I would submit to the court that this court has indicated in the Red A. Mendez case from 2012 that the Michigan assault with a dangerous weapon statute would qualify as a crime of violence. In that case, the court was looking at a New Mexico aggravated assault statute that had the unusual language of allowing an assault under New Mexico law to occur by means of insulting language. That was really the hinge of that case in which the court found that that statute did not qualify as aggravated assault under the enumerated offenses in the guidelines or under the use of force elements clause. But in looking at how the court came to that conclusion, the court very clearly said that the New Mexico statute differs from aggravated assault under the guidelines in two ways. One, the mens rea did not require specific intent to injure or frighten, whereas in the Michigan statute, as this court recognized in Singh v. Holder, would require either one of those specific intents, either intent to injure or intent to frighten somebody. The imminent battery or harm is coming. The other way that the court distinguished the New Mexico statute from the sort of model, pinnacle, generic definition of aggravated assault is that the underlying assault could be committed by using insulting language. And the court very clearly said if the New Mexico statute required at least, the least touching is the phrase that the court used, and that was accompanied with a dangerous weapon, that that would qualify or may qualify as a violent force under Johnson 2010. And I would note that the New Mexico battery statute had kind of the same type of language that the Michigan battery offense has of unlawful intentional touching by application of force to another when done in a rude or insolent manner kind of offensive touching. And the panel in Red Amendes said if an assault statute, an assault with a dangerous weapon statute requires assault which at least requires some kind of touching or, as the court said in that case, physical force in the more general sense, accompanying with a dangerous weapon, that's violent force under Johnson 2010. And that's the reasoning that was echoed in the Wendelton case from the First Circuit last year, which really had basically exactly this issue that the defendants have tried to raise in their briefing today by saying where the Massachusetts statute could be convicted, could be violated, an assault with a dangerous weapon statute could be violated by attempting to threaten a battery, or attempting or threatening a battery. And under Massachusetts law, a battery could also be convicted or committed by harmful or offensive touching. And so the defense argument in their, in the Wendelton case, is that because you could commit assault by attempted or threatening offensive touching, that assault with a dangerous weapon, therefore, would not qualify under Johnson 2010. And the Wendelton court soundly rejected that reasoning, noting that that really sort of overlooked the dangerous weapon element and that added an element to the offense and that, logically, the harm threatened by use of a dangerous weapon was more than offensive touching. That's the approach that the court should take with respect to the Michigan statute, which is really almost identical to the Massachusetts statute and I think consistent with this court's reasoning in the Reddy-Mendez case. I would note also that the Supreme Court itself in Johnson 2010 cited to, when it was discussing what violent felony or violent force means, it cited to Black's Law Dictionary, and in fact quoted Black's Law Dictionary, that cited assault and battery with a dangerous weapon as sort of a stereotypical or archetypical example of a violent felony or violent force. And so when we're looking at the assault with a dangerous weapon, there's sort of two ways that the court can look at it, and two ways that it would qualify as a crime of violence. One is whether it's an enumerated offense under the guidelines under the aggravated assault rubric or whether it qualifies under the use of force. I've spent some time talking about the use of force, but I would note that this court's decision in United States v. Cooper, which was looking at the Tennessee aggravated assault statute, should drive the decision on whether it qualifies as an enumerated offense. Your time is up. If you want to finish that thought, you can. Just that in that case, the court had to kind of wind through the Tennessee statute and use the modified categorical approach, but in doing that determined that the defendant had been convicted of assault using or displaying a deadly weapon. In Tennessee, assault could include intentional conduct that a person would regard as extremely offensive or provocative, and the court nevertheless found that the dangerous weapon component of that made it the equivalent of aggravated assault. All right. Thank you, Mr. Chastain. So, Mr. Loosley. May it please the Court. My name is John Loosley on behalf of Appellant Lewis Bell. On rebuttal, I'd like to address a point as to why this appeal has actually even been brought, and that is entirely due to the Supreme Court's decision in 2015 in Johnson. But for Johnson, this appeal would not have been brought, and as a result, every party should be stuck with the waiver that they were with, but for the Johnson issue. That gets rid of their waiver, but not yours. Very good. You're going to be good. That opened the door for every other issue? Yes, Your Honor. It did. What's your best case on that? Well, Your Honor. Be a good case on it. Our best case on that is really a case of this court being able to exercise its judicial discretion in the favor of judicial economy with regards to bringing in the manslaughter conviction, not receiving criminal history points, pursuant to the Application Note 12 of 2K2.1. So? You want what you're seeking is to have this remanded for consideration of that crime of violence, and so if the court considers that, it can consider the whole revised pre-sentence report, right? No, Judge Siler. We are asking for a limited remand because of the issues raised in Johnson. Because Johnson is a substantive rule and the Supreme Court has declared it's retroactive, Mr. Pell is seeking relief, trying to attack one of the underlying predicate offenses, assault with a dangerous weapon under Michigan law. And as a result, this brings in the issue of the underlying manslaughter conviction as well. But what's your answer to the plain air point that, you know, even if we accept your received argument that was a gift and there's no plain air here, there's no air at all, because if you do it correctly, manslaughter would have gotten the three points. Even under your argument, that would have allowed it to count as a crime of violence because you acknowledge it otherwise is a crime of violence. And so the Johnson errors disappear. We're in plain air world, which means you have to show an error, and there's not even an error. And indeed, there's a benefit. By counsel quite cleverly accepting the PSR, Bell got a better range than he deserved. So whatever that is, it can't be plain air. Yes, Judge Sutton. I understand your point, but I think what's really determinative here is which party is in the position to correct the errors of the PSR? Who has to carry that burden? If in this case . . . The answer is really clear. I mean, it's really obvious how this works. Government has the burden to prepare the PSR, say the PSR probation office threshold view what to do. At that point, it's incumbent on the defendant to decide what they want to litigate. And what they choose not to litigate falls in plain . . . I mean, that's about as established a criminal law principle as there is. Yes, Judge Sutton, but in this case, the government did not correct its error of having the manslaughter conviction not receive criminal history points. And the court in administering . . . Because it was told that the defendant was going to accept the PSR, which, by the way, included treating this as a crime of violence. And if that's true, then the government and the defendant together can contravene the statutory language of the sentencing guidelines. Great point, except . . . It's not a great point if when you figure out what the right answer would have been, it still doesn't amount to an error, except in the sense that he got a lower guideline range than he deserved. So the only contravening that happened here was one that benefited your client. And there's no obligation to challenge that. It's a gift. Well, Judge Sutton, as both this court has indicated and my opponent, that Mr. Bell had a very competent attorney during his first appeal and made a very sound strategic decision not to challenge . . . He's doing well this time around. He's got good lawyers. Not to challenge the fact that he didn't receive any points. And that's just a good strategy. But ultimately, the government failed to carry its burden to get that point scored. And the language of the Application Note 12 is incredibly clear. It says received. But how in this do you concede that plain error applies to the manslaughter issue? We do not concede that plain error must apply to the manslaughter issue because this court can resolve the issue here and now under no review by exercising its discretion. So this issue can be resolved now as opposed to later in a 2255 motion that might be brought with regards to ineffective assistance of counsel. So Mr. Allen is going to be charged with ineffective assistance of counsel after cleverly agreeing to a lower guideline range? I cannot personally say what might be brought in the future. I see my time has concluded, if I may briefly conclude. Because of Johnson, the assault with a dangerous weapon conviction under Michigan law cannot fall under either an enumerated offense or under the force clause because it's simply a mere touching. And because the Manslaughter Convention contravened the clear language of the Application Note 12, which says received, and there is no language in either wise or battle out of circuit as to how they arrived at that statutory interpretation. The only thing that was interpreted was Guidelines 4A1A and 4A1B. There is no reason for this Court to reach that same result. Thank you. Thanks to all three of you for your excellent arguments. Thank you, Ms. Salinas, for bringing these young lawyers here. Mr. Kim and Mr. Loosley, you guys did a great job. And Mr. Chasteen, you don't need our compliments, but as expected, you did a good job as well. But thank you for joining us. And I think Mr. Bell was lucky to have such good advocates. So thank you for your good work. Case is submitted. The clerk may call the next case.